Attachment
To Memorandum in Support.

Respondeat Superior Liability

A person deprives another of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or ommits to perform an act which he is legally required to do, that causes the deprivation see complained of Leer v. Murphy 844 F.2d 628, 633 (9th cir 1988) Johnson v. Duffy, 588 F.2d 740, 743 (9th cir 1978). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendants action and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976), May v. Enomoto, 633 F.2d 164, 167 (9th cir 1980)

In addition, A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violation, or knew of the violation and failed to act to prevent them. There is no respondeat superior liability under section 1983 Taylor v. List, 880 F.2d 1040, 1045 9th cir 1989.

All Defendants are in supervisory positions of power collectively they tacitly authorized the constitutional defective deficient housing practice for years with their knowledge of the same pattern of violence upon prisoners (non-gang members) yet collectively remained silent and took no preventive measure to abate this dangerous practice housing practice they collectively acquiesced a deficient policy that was a moving force behind my (plaintiffs) right to personal security. Redman 942 F.2d 1435 at 1446 [11] and 1447 "moving force"

Page 1 of 13

Attachment
To Memorandum in Support

### Mootness

A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted. "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." Aguirre v. S.S. Sohio Intrepid, 801 F.2d 1185, 1189 (9th Cir 1986) (citing FLAst v. Cohen, 392 U.S. 83, 95 (1968)

Plaintiff's injuries recieved when seperated prison-gang members tried to murder him are certainly not moot.

Plaintiff, has brought an action for damages against the State of Hawaii and officials of the State of Hawaii acting in their official capacity, this action is barred by the eleventh Amendment to the united states Constitution, under the eleventh Amendment A state is immune from suit brought in federal court by her own citizens or citizens of other states. Papasan v. Allain, 478 U.S. 265, 276 (1986) Pennhurst State School & Hosp. v. Halderman. 465 U.S. 89, 100 (1984).

A suit against state officials, in their official capacity is no different than a suit against the State itself and therefore is subject to the eleventh Amendment. Kentucky v. Graham 473 U.S. 159, 166-67 1985.

I am not a Lawyer and as a safeguard if it applies will cite Ashker v. California Department of Corrections 112 F.3d 392 at 392 #3. Federal Courts 26a and at 395 [3] "Given that Ashker filed the complaint pro per and informa pauperis, we construe it liberally to mean that he was suing .... in their personal capacities, and, in the alternative in their Official capacities" (9th Cir 1997) [Note: only if applicable.

Page 2 of 12

Attachment
To Memorandum in Support

## Official Capacity

Furthermore, "Neither a state nor its officials acting in their officials Capacity are 'persons' under § 1983." Will v. Michigan Dept. of State Police 491 U.S. 58, 62-71 (1989). This suit is barred only to the extent that the complaint states a cause of Action against Defendants in their official Capacity for monetary Damages.

## Eight Amendment

The law is clearly established regarding a Prison officials duty to take reasonable measures to protect inmates from Violence at the hands of other prisoners Robinson v. Prunty 249 F. 3d 862, 865 (9th Cir 2001) (citations omitted); Sweet v. Hernandez No. C02-1709 SI (PR), 2003 WL 21920921, *6 (N.D. Cal. Aug. 6, 2003) "Deliberate indifference to the risk that an inmate will be harmed by other prisoners Constitutes a Violation of the eighth Amendment" Robinson, 249 F. 3d at 865. See also Farmer v. Brennan 114 S. Ct 1970, 1971, 1972 (1994)

All Defendants affirmatively promoted a policy which sanctioned the type of action which Caused the Violation, these conditions created the background and Climate which preordained Violence upon prisoners (Non-gang members) Defendants failed to segregate Violent (seperated prison gang members) from Non-Violent (Non-gang members) prisoners. demonstrateing deliberate indifference, and Callous indifference and Failure to Protect Violation of U.S.C.A. 8th

Page - 4

Attachment
To memorandum in support

This housing practice is sometimes referred to by prison officials as a 'separatee issue' and since the rival prison gangs were at each others throats (fighting) or almost killing each other, prison officials made a decision to seperate rival gangs, so in essence they were segregated from rival gang for their protection.

This "Separatee issue" seperation of Rival prison gangs resulted in concentration of seperated prisons gangs members that were concentrated into a certain areas of the prison and belong to one single gang.

Now Prison officials are "tight lip" on this they will not say that this is what they did or that it resulted in the description I have given. They are remaining silent, but the closest to the description of this dangerous housing practice described by CindaSandin (Residency section supervisor) on my exhibits B-1, B-2, B3, B-4 attach herein. Cinda Sandin describes in her response to Anthony Nesbit that Prison gang members are seperated due to violence they were "Arming with shanks" "planned violence", and Prison officials made a Joint decision by security Staff, (Capt, Lt, Seargent) to decrease fighting.

Cinda Sandin (Residency section supervisor) also stated "since the gang members were seperated, this is not a formal policy and is not in writing, per policy all close custody inmates can be housed together."

"At the time respondent filed - complaint - it was clear that proof of the existance of a custom entailed a showing of practices so permanent and well settled as to constitute a "custom or usage with the force of Law" from Canton 109 S.ct 1197 at 1210.

Attachment
To memorandum in support

This unwritten policy is a 'practice' tacitly authorized by all Defendants, and Cinda Sandin trys to justify this dangerous housing practice by utilizing valid written policy in an unconstitutional manner for years. (See exhibit B-3 herein)

Prison officials have given this housing practice many different labels, such as Separatee issue - close custody - medium custody - special management inmates - ect. But no matter what the Defendants want to label this the result is the same and that is concentrations of seperated prison gang members and leaders belonging to a single gang and housed in certain areas of the prison and then what comes next to a reasonable man of average intelligence is upon its face a obvious danger. (see all A-exhibits in civ-03-00455) and all exhibits-c herein

Prison officials will take a prisoner who has no gang affiliation or participation and put him in with 10-30 of these seperated prison gang members. When we look at this picture the disproportionate and disparate impact is obvious and it **doesn't take a** Rocket Scientist to predict and foresee the consequences of a move like this.

The chances are slim for anyone to escape violence or he will become a victim, in some form and I was seriously injured and almost murdered because of this practice. Defendants tacitly authorized and acquiesced what there subordinates have formulated and implimented. the only reason that their subordinate can utilize a practice that offends the eighth amendment is because they allow it, they sanction the action, collectively they affirmatively promoted a practice that caused the violation.

SEE RIZZO 96 S.CT at 611 " Statutory duty to Supervise"

Attachment
To memorandum in support

And Defendants have remained deliberately ignorant to the pattern of injury and violence upon (NON-gang members, Non-gang affiliate, and non gang participants prisoners). They are like "ostrichs" to this known danger and skirt this issue when it is brought up and always giving some kind of generic answer.

The reason for this deliberate ignorance is obviously to hide their accountability for an obvious unlawful practice. Conscious Avoidance U.S. v. Jewell 532 F. 2d 697.

The Directors cannot elude their mandate and fail to promulgate and enforce their statutory duties. Whether the defendants knew "me" personally is not an issue. The Defendants affirmatively promoted an unconstitutional housing practice and they are accountable.

Tacit authorization is mentioned in City of Canton, Ohio v. Harris 109 S. Ct 1197 at 1209 The "deliberate indifference" standard we adopt today have required a showing of a pattern of violations from which a kind of "tacit authorization" by city policy makers **can be inferred**.

Also from Zatler v. Wainwright 802 F. 2d 397 at 404 "there is no question about the legal principle that where a prison supervisor with knowledge of "a pervasive and unreasonable risk of harm" to the prisoner, fail to take reasonable remedial steps to prevent such harm, their conduct may be properly characterized as "deliberate indifference" or as Tacit authorization of the offensive acts, for which <u>they</u> may be held <u>independently Liable</u> under § 1983.

Page - 7

Attachment
To memorandum in support

To Prison officials, we are a subhuman species that deserves to suffer violence, and prison officials are undoubtly over worked because of overcrowding, but it has also created a pervasive risk of harm due to their apathy animosity and callousness because of overcrowding, **Jeopardizeing Security.**

When has Halawa prison "not" been overcrowded this overcrowding is a perpetual state that has affected prison officials mental state. They are obviously unbalanced and having to work in an overcrowded environment, has distorted their rational and distorted their perspective of reality. The result is this obviously dangerous housing practice, where victimization of prisoners is considered common and allowed.

The evidence of a prison with a disease of corruption is the evidence that the News media portrays on T.V. and the radio for the last 5 years or longer. No one is surprised any more as to what diabolic condition is found in Halawa prison, the ice smuggled in by guards in quanitys of ½ pound or more, guards apperently profit from the prison drug industry, Guards utilizing prison gangs for distributions of the drugs and sales, guards utilize prison gangs to punish and control other prisoners to better manage their profits and ensure payment. Internal affairs involment with **ongoing corruption involving guards and gangs, See all exhibits-C, herein.**

The escapes from the maximum security facility, Parole Board members make the news in a pay-off scandall that involved the setting of minimums for money also parole Board member is charge with Domestic abuse that cause the entire parole board to **step down, this prison is in dire straits.**   Page 7 of 12

Attachment
To memorandum in support

A lawyer was busted in a sting operation in trying to buy large quantity's of drugs to distribute in Halawa Prison, as of he wasn't already been doing that!!

And then the State of Hawaii and Public safety Director and administrators, wants to take a back seat to this obviously dire situation and say we personally did not know Mr. Aholelei and we don't know whats going on down in Halawa prison, the warden handles that (ostrich theory).

The fact is they should be down at this prison hands-on dealing with outside advisers to remedie the situation but they are failing to act and fail to supervise, and failing to promulgate their Statutory duty, instead prison officials are free "to let the State of Nature take its course" DeShaney supra, 489 U.S. at 199-200, 109 S. Ct at 3021-3022; Estelle, supra 429 U.S. at 103-104, 97 S. Ct at 290-291 Quote Farmer V. Brennan 114 S. Ct at 1977.

Defendants can not wash their hands of this known hazard and dangerous practice they created. State officials together share "a joint responsibility for the proper functioning of the prison"
Inmates of Suffolk County Jail V. Eisenstadt 494 F. 2d 1196, 1199 (1st Cir 1974)

And I hold them all accountable by law for violations of the 8th Amendment and 14th amendment. or which ever apply. I am not a lawyer. I am not a gang member and I am not a drug addict. and prison officials from the top on down share a joint responsibility in a duty to promulgate and enforce minimum standards of care and custody and safety and protection but have failed to provide this.

Attachment
To memorandum in support

And by Law, I can hold them responsible, all of them collectively have affirmatively promoted and tacitly authorized this unconstitutional practice.

"It is clear that an official may be enjoined from consciously permitting his subordinates in the course of their duties, to violate the constitutional rights of persons with whom they deal and" were under a statutory duty to supervise their subordinates" From Rizzo v. Goode 96 S.Ct 598 at 611.

The Attorney general is also Liable and can not claim prosectoral immunity or quasi-judicial capacity see Ybarra v. Reno thunderbird mobile home village 723 F.2d 675 at 675 and 676 - failure to train, failure to supervise, and failure to act, and failure to investigate prisoners claim and tort of a unconstitutional housing practice that prisoner claimed in letter to Attorney general, "imediate threat and danger to my life".

This letter and tort was recieved by Attorney General on march 17th 2003 seven (7) month before my brutal beatings and attack on my life and The attorney General has significant power to take reasonable measures to abate this Known risk of harm, but failed to do so. He has actual Knowledge and did nothing to prevent harm and danger to prisoners. The proof of his knowledge and failure to investigate is in exhibits D-1, D-2, D-3, D-4 herein (see also all exhibits G in civ-complaint No-03-00455)

All these case Laws agree that a state Attorney General Can be held accountable in his Administrative and Investigative functions.
(9th Cir 1984) - Ybarra 723 F.2d 675 / Imbler 96 S.Ct 984
Robichaud 351 F.2d 533 / 9th Cir. 1965)

Page - 1

Attachment
To memorandum in support

The Attorney General and State Public Safety Department, works hand-in-hand and the attorney general oversees practices and policies for the department of public safety, and He does this in his administrative capacity as an advisor and what he tells the state public safety department, they comply with.

The state public safety Department relies on the state attorney General for legal advise, see civil Complaint 04-00157 exhibit-C and in this letter, it states "the signatures on the last page of the policy are the administrators, who finalized and approved the policy after it was reviewed by the attorney Generals office. "Affirmative Link"? Rizzo 96 S.Ct 598

This is proof of the close relationship between the state attorney general and state public safety Directors and administrators. (he provides Legal direction)

Now upon recieving MR. Nesbits letter and tort all the Attorney General had to do was tell P.S.D officials to stop the described dangerous housing practice in MR. Nesbits letter, and I have no doubt in light of the letter in civ 04-00157 exhibit C that public safety officials would have found a alternative to the described dangerous housing practice. (they Listen to him)

But since the attorney general did not do anything, He tacitly authorizes and acquiesened the described dangerous housing practice that resulted in my Brutal Beating and attempted to murder me. The Attorney General has significant power to take reasonable measures to abate a known risk of harm and is **acco**untable in allowing it to exist in light of his knowledge of the danger described in MR. Nesbits letter, exhibit D-1 herein also in civil Complaint 03-00455 SOM KSC exhibit G-1.

Attachment
To memorandum in support

and in light of his significant power to advise P.S.D. officials, who relies on the Attorney General for legal advise and abide by his professional expertise.

Apperently, P.S.D. officials depends on the Attorney General for policy and practice approval. His involvment with the unconstitutional deprivations at Halawa prison are substantial and he has actual knowledge of this described dangerous housing practice, and he may be demonstrating a policy of discrimination against prisoners claims in failing to investigate.

He certainly can oversee and scrutinize policy and procedures for the Department of public safety and directs them on what to do.

But when a prisoner says his life is in danger and his rights are being violated because of a dangerous housing practice. The Attorney General does not scrutinize the practice (matter) or investigate. He tells the prisoner it's not my job & file a grievance. What is wrong with this picture? I say a lot and its facially obvious the attorney General is very liable. He needs more training in prisoners civil rights. He cannot claim that he didn't know!! He is "deliberately indifference", See all exhibits-D herein.

On Feb-18-03 an inmate Anthony Nesbit, fearing for his life filled a "tort claim" to the Risk management office allerting them of the dangerous consequences of this current housing practice, See exhibit D-1 herein.

On Feb-20-03 Risk management office referral his complaint (matter) to the Department of the attorney General, See exhibit D-2 herein.

To memorandum in support

This Dangerous housing practice practice was brought to the attention of the attorney General many months or maybe years before my brutal beatings and it could of been prevented if the attorney General investigated the concerned matter stated by Anthony Nesbit and other concerned prisoners reguarding the dangerous housing practice, but he failed and in results of his failure, I was brutally beaten and almost lost my life.

The Doctor told me two (2) weeks ago that the beatings was so severe that part of my brain may have been scar or damage thats the reason why? I am experiencing sparks on my spine and result in numbness of left side of my head 4 to 5 times a week. He said that I am experiencing small stroke four (4) to five (5) times a week and I'll be like that for the rest of my life. My jaw was also broken in four and I dont have any feeling in the lower part of my mouth and *I always biting* my tongue and lips because of the numbness. The Doctor also told me that I'll be like that for the rest of my life. I will continue to suffer for the rest of my life!

Respectfully Submitted

Dated August-24-2005
Honolulu, Hawaii

William S. Aholelei
William S. Aholelei
Plaintiff Pro Se