ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 0 6 2005

at 3 o'clock and 20 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM S. AHOLELEI, | ) | CIV. NO. 04-00414 SOM-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' AND |
| | ) | THIRD-PARTY PLAINTIFFS' MOTION |
| vs. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| STATE OF HAWAII, DEPARTMENT | ) | |
| OF PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS' AND THIRD-PARTY PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

This is a case in which the law unfortunately does not give an injured plaintiff the remedy he seeks. If his injury is to be redressed, it must be in a different forum, or on a different record.

Before the court is a Motion for Summary Judgment ("Motion") filed by Defendants and Third-Party Plaintiffs State of Hawaii Department of Public Safety ("DPS"), John Peyton, Frank Lopez, Edwin Shimoda, Clayton Frank, Randy Asher, Eric Tanaka, Gary Kaplan, May Andrade, Cinda Sandin, and the State of Hawaii Attorney General (collectively "Defendants").

A hearing on the Motion was held on December 5, 2005. Deputy Attorney General John M. Cregor Jr. appeared on behalf of Defendants. Plaintiff William S. Aholelei, an inmate proceeding *pro se*, appeared at the hearing by telephone. The court GRANTS Defendants' Motion for the reasons set forth below.

**BACKGROUND**

Aholelei filed this civil rights complaint on July 9, 2004, alleging that Defendants failed to protect him from harm when they housed him with known gang members. According to the Complaint, in March or April 2002, Aholelei was transferred to Halawa Correctional Facility ("HCF") "Module-2, A-block, Quad-2." (Compl. Stmt. of Facts 1.) Within a few days, Aholelei realized that he had been housed with prison gang members. Aholelei says, "These sep[a]rated gang members seemed to have no problem with me, even though I am not a gang-member, so long as I obide [sic] by their rules." (Id.) Aholelei says that he went along with the prison gang members' rules and was safe for the next year and a half, until October 3, 2003. (Id. 1-2.)

Aholelei says that, on or about October 3, 2003, he took a place in the front of the prison lunch line. A gang member approached Aholelei and told him that he was not allowed to lead the lunch line, as this privilege was reserved for gang members. At this point, Aholelei says, he realized that he might have angered these gang members, and he sought a meeting with them to apologize and erase any ill-feelings he might have caused. When Aholelei arrived at the cell where the meeting was to take place, he was allegedly attacked and severely beaten by several gang members, leaving him with permanent, serious injury. Aholelei spent six days in a coma at the Queen's Medical Center

2

following the attack.  He later returned to HCF, where he was
first housed in the medical unit, and then in protective custody.
Aholelei was then transferred from HCF to Waiawa Correctional
Facility ("WCF").  He is now incarcerated at Oahu Community
Correctional Center("OCCC").

Aholelei alleges that Defendants are liable for his
injuries because they knew, or should have known, of the dangers
inherent in housing gang members and non-gang members together,
as inmates belonging to rival gangs were separated.  Aholelei
believes that his assault was the result of the DPS's allegedly
unconstitutional policies and procedures allowing known gang
members at HCF to be housed with non-gang members.  Aholelei
seeks $4 million in damages.  He also seeks declaratory and
injunctive relief requiring Defendants to cease housing non-gang
members with known gang members, to "create a deterrent to prison
gang membership," and to reduce the prison population to an
"acceptable level to be determined by a U.S. Judge."  (Compl. at
"Relief.")

## LEGAL STANDARD

Summary judgment shall be granted when

    the pleadings, depositions, answers to interrogatories,
    and admissions on file, together with the affidavits,
    if any, show that there is no genuine issue as to any
    material fact and that the moving party is entitled to
    a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,
383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,
198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal
purposes of summary judgment is to identify and dispose of
factually unsupported claims and defenses.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).

     Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial.  See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The moving party must identify for the court
"those portions of the materials on file that it believes
demonstrate the absence of any genuine issue of material fact."
T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d
626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

     "When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
(footnote omitted).  The nonmoving party may not rely on the mere
allegations in the pleadings and instead "must set forth specific

facts showing that there is a genuine issue for trial." <u>Porter</u>, 383 F.3d at 1024 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu</u>, 198 F.3d at 1134 (stating "[t]here must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion").

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. <u>Porter</u>, 338 F.3d at 1024. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. <u>Id.</u> However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

Although Defendants style this motion as a summary judgment motion, the portion of the motion based on Eleventh Amendment immunity is more accurately viewed as a motion to

dismiss for lack of subject matter jurisdiction, under Rule
12(b)(1) of the Federal Rules of Civil Procedure.  Under the
Eleventh Amendment, a state is immune from certain actions
brought in federal court by her own citizens or citizens of other
states.  Papasan v. Allain, 478 U.S. 265, 276 (1986); Pennhurst
State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 106 (1984);
Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th
Cir. 1989).

         There has been much confusion over whether Eleventh
Amendment immunity is a component of the court's subject matter
jurisdiction.  The Supreme Court has stated that the "fact that
the State appeared and offered defenses on the merits does not
foreclose consideration of the Eleventh Amendment issue; 'the
Eleventh Amendment defense sufficiently partakes of the nature of
a jurisdictional bar' that it may be raised at any point of the
proceedings."  Fla. Dept. of State v. Treasure Salvors, 458 U.S.
670, 683 n.18 (1982) (quoting Edelman v. Jordan, 415 U.S. 651,
678 (1974)).  The Ninth Circuit has similarly stated that
"Eleventh Amendment sovereign immunity limits the jurisdiction of
the federal courts and can be raised by a party at any time
during judicial proceedings or by the court sua sponte."  Cal.
Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1048
(9th Cir. 1999); see also Blue v. Widnall, 162 F.3d 541, 544 (9th

Cir. 1998); <u>Charley's Taxi Radio Dispach v. Sida of Haw.</u>, 810
F.2d 869, 873 n.2 (9th Cir. 1987).

Other appellate decisions, however, have noted that
sovereign immunity may be waived.  <u>See</u> <u>Coll. Sav. Bank v. Fla.</u>
<u>Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 675
(1991); <u>Hill v. Blind Indus. & Servs. of Md.</u>, 179 F.3d 754, 760,
<u>as amended</u>, 201 F.3d 1186 (9th Cir. 1999); <u>ITSI TV Prods., Inc.</u>
<u>v. Agric. Assocs.</u>, 3 F.3d 1289, 1291-92 (9th Cir. 1993).  Under
this line of cases, Eleventh Amendment immunity is treated as an
affirmative defense that the agency claiming immunity has the
burden of demonstrating.  <u>ITSI</u>, 3 F.3d at 1291-92.

The Ninth Circuit has attempted to reconcile these
apparently conflicting cases, calling states' Eleventh Amendment
immunity "quasi-jurisdictional."  <u>Bliemeister v. Bliemeister (In</u>
<u>re Bliemeister)</u>, 296 F.3d 858, 861 (9th Cir. 2002).  Under
<u>Bliemeister</u>, sovereign immunity "may be forfeited where the state
fails to assert it and therefore may be viewed as an affirmative
defense."  <u>Id.</u>  In the present motion, Defendants assert Eleventh
Amendment immunity.  No matter how that immunity is
characterized, Eleventh Amendment immunity bars Aholelei's claims
against all Defendants in their official capacities.

## DISCUSSION

Defendants assert five grounds in support of their
Motion: (1) Aholelei fails to state a claim under the Eighth

7

Amendment; (2) Defendants are entitled to Eleventh Amendment
immunity; (3) the State of Hawaii and its employees, while acting
in their official capacities, are not "persons" within the
meaning of 42 U.S.C. § 1983; (3) there is no respondeat superior
liability under 42 U.S.C. § 1983, and the individuals named as
Defendants were not personally involved in the actions and events
giving rise to Aholelei's claims; and (5) Defendants are entitled
to qualified immunity in their individual capacities.

　　　　Aholelei counters simply that he is alleging that
Defendants failed to protect him from other inmates while he was
incarcerated at HCF. Aholelei asserts that Defendants' failure
to protect him stems directly from the DPS's official policy and
practice, utilized at HCF, of separating rival gang members from
each other while housing non-gang members with the separated
rival gangs.

I.　　Official Defendants Have Immunity Under the Eleventh
　　　Amendment.

　　　　"The Eleventh Amendment prohibits federal courts from
hearing suits brought against an unconsenting state." Brooks v.
Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir.
1991) (citation omitted); see also Idaho v. Couer d'Alene Tribe,
521 U.S. 261, 267-68 (1997). The Eleventh Amendment also bars
damage actions against state officials in their official
capacities. See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d
836, 839 (9th Cir. 1997). The Eleventh Amendment bars suit

8

against state agencies as well as suits naming the state itself.

See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,
506 U.S. 139, 144 (1993); see also Lucas v. Dep't. of Corr., 66
F.3d 245, 248 (9th Cir. 1995)(per curiam) (stating that the Board
of Corrections is an agency entitled to absolute immunity);
Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding
that the Nevada Department of Prisons is a state agency entitled
to Eleventh Amendment immunity).  The Eleventh Amendment,
however, does not bar suits against state officials for
prospective declaratory or injunctive relief.  See Pennhurst
State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-06 (1997);
Lawrence Livermore Nat'l Lab., 131 F.3d at 839.

Defendants, as State of Hawaii agencies or employees,
are immune from suit for damages in their official capacities.
Defendants' motion for summary judgment on Aholelei's claims
against them in their official capacities for monetary damages is
GRANTED.

II.  This Court Lacks Jurisdiction Over Aholelei's Claims for
     Injunctive Relief.

Aholelei has now been transferred to OCCC.  It is
unclear if the contested DPS policy of separating rival gang
members from each other while housing non-gang members with the
separated gang members is in effect at OCCC.  Nonetheless,
Aholelei's transfer to OCCC renders moot his claims for
injunctive relief seeking to overturn or modify DPS's housing

9

policy as it relates to the housing of gang members with non-gang members at HCF. <u>Kasza v. Browner</u>, 133 F.3d 1159, 1172 (9th Cir. 1998) ("A case is moot when the controversy isn't live any longer."); <u>American Rivers v. National Marine Fisheries Serv.</u>, 126 F.3d 1118, 1123-24 (9th Cir. 1997); <u>see also</u> <u>Darring v. Kincheloe</u>, 783 F.2d 874, 876-77 (9th Cir. 1986) (holding that when an inmate has been transferred to another prison, there is no reasonable expectation that he will again be subjected to the prison conditions he seeks to enjoin). Nor does Aholelei have standing to assert the rights of inmates still housed at HCF. <u>See</u> <u>Jackson v. Official Representatives and Employees of Los Angeles Police Dep't</u>, 487 F.2d 885, 886 (9th Cir. 1973)).

This court lacks jurisdiction to entertain Aholelei's claims against Defendants for injunctive relief with respect to the DPS's allegedly unconstitutional housing policy at HCF. Accordingly, Aholelei's claims against Defendants for injunctive relief relating to HCF's gang member housing policy are hereby DISMISSED.

III. <u>Individual Defendants Are Not Personally Liable.</u>

Defendants Peyton, Lopez, Shimoda, Frank, Asher, Tanaka, Kaplan, Andrade, Sandin, and the Attorney General argue that Aholelei has failed to state a claim against them in their individual capacities under the Eighth Amendment, and that summary judgment should be granted on this basis.

In support of their Motion, Defendants provide the
sworn declaration of Gary Kaplan, DPS Corrections Supervisor II.
(See Defs. Concise Stmt. of Facts, Ex. B. Kaplan Dec.)  Kaplan
states that he has been responsible for virtually all housing
assignments at HCF since August 2003.  (Kaplan Dec. ¶ 4.)  Kaplan
says that Aholelei's initial housing assignment at HCF was
"routinely made following his initial processing and
classification," although Kaplan does not identify who actually
made Aholelei's housing assignment.  (Id. ¶ 5.)  Kaplan avers
that Defendants Peyton, Lopez, and Shimoda were never involved in
the housing assignments of Aholelei or any other inmate.[1]  (Id.
¶¶ 3, 6.)  Kaplan further states that Defendants Frank, Asher,
and Tanaka were rarely involved in inmate housing assignments,
and were not involved in Aholelei's housing assignment.[2]  (Id.)
Similarly, Kaplan avers that Defendants Andrade and Sandin had no
involvement in Aholelei's housing assignment.[3]  (Id.)

---

[1] Peyton is the past DPS Director, Lopez is the past DPS
Deputy Director and present interim DPS Director, and Shimoda is
the DPS Institutions Division Administrator. (Kaplan Dec. ¶ 3.)

[2] During the time at issue, Frank was HCF Warden, and Asher
and Tanaka were HCF Deputy Wardens.  (Kaplan Dec. ¶ 3.) Kaplan
states that although the Warden does have the final authority in
inmate housing, neither Frank, Tanaka, nor Asher exercised that
authority in Aholelei's case. (Id.)

[3] Kaplan states that Andrade was, at all times material to
Aholelei's Complaint, Chief of Security at HCF.  He states that
Sandin, who is the HCF Corrections Supervisor II at the HCF
Special Needs Facility, is involved in housing assignments at the
HCF Special Needs Facility, but was not involved in Aholelei's

Kaplan says that it has been HCF prison officials'
experience that housing rival gang members together leads to
increased violence at the prison. (Id. ¶ 9.)  Accordingly, it is
HCF's policy to separate rival gangs from each other when making
housing assignments.  (Id.)  Kaplan asserts, however, that it has
also been their experience that once rival gangs are separated
from each other, the separated gang members are no more violent
than the prison population in general.  (Id. ¶ 10.)  It is
Kaplan's "personal and professional policy never to knowingly
place a prisoner in a housing assignment that would place him in
an increased risk of harm."  (Id. ¶ 11.)

Finally, Kaplan states that Aholelei did not, before he
was assaulted, alert any prison official that he was afraid of
being housed with gang members, or that he believed he might be
attacked by prison gang members that he had inadvertently
offended.  (Id. ¶¶ 7, 8, 12.)  Kaplan says that during the entire
year and a half that Aholelei was housed with gang members before
he was assaulted, Aholelei never complained, in person or by
grievance, to any prison official of his fear for his safety.
(Id.)

Aholelei's Opposition does not specifically dispute
Kaplan's statements regarding who was responsible for his housing
assignment or regarding Aholelei's failure to notify Defendants

housing assignment. (Kaplan Dec. ¶ 3.)

12

of his general or specific fears for his safety.  Aholelei
instead argues again that his claims concern Defendants' alleged
failure to protect him.  Aholelei contends that a "reasonable man
of average intelligence" would see that the prison's policy of
separating rival gang members, while housing non-gang members
with the separated gang members, "is an obvious danger to
prisoners."[4]  (Op. ¶ 67.)  Aholelei asserts that although he was
able to "precariously co-exist with sep[a]rated concentrated gang
members" this does not negate the fact that his living conditions
were always "uncertain and dangerously insecure."  (Id. ¶ 68.)

       At the hearing on the present Motion, Aholelei said
that he had orally communicated his fear to a prison guard and
other prison officials, but his statement is not corroborated by
a declaration or other evidence.  Under these circumstances, the
court cannot consider this statement.  Even if the court were
inclined to allow Aholelei to supplement the record, his
assertion would be insufficient to defeat summary judgment, as he
fails to specify in any meaningful way to whom or when the
alleged oral communications were made.

---

[4] Aholelei appears to be indirectly asserting that
Defendants are liable for his injuries because they were either
responsible for the contested DPS housing policy, or were aware
of the policy and its alleged inherent dangers, and did nothing
to change the policy.  He does not, however, make this argument
explicit in his Complaint or Opposition.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). In particular, officials have a duty to protect inmates from violence at the hands of other inmates. <u>Id.</u> at 833. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. <u>Id.</u> at 834.

To be liable for failure to prevent harm, a prison official must know of and disregard an excessive risk to inmate safety. <u>Id.</u> at 837. The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. <u>See id.</u> A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault." <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986). Before being required to take action a prison official must, however, have more than a "mere suspicion" that an attack will occur. <u>Id.</u> at 459-60 (summary judgment was appropriate when the plaintiff "failed to come forward with any facts showing that

these defendants had any reason to believe he would be attacked
by the assailant").

When, as here, an inmate is seeking damages against a
defendant, the "inquiry into causation must be individualized and
focus on the duties and responsibilities of each individual
defendant whose acts or omissions are alleged to have caused a
constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633
(9th Cir. 1988). Leer explained that "it is important to
distinguish the causal connection required when a plaintiff seeks
injunctive or declaratory relief as opposed to damages." Id.
When a plaintiff seeks injunctive or declaratory relief a
broader, more generalized approach to causation is taken. See
id. When a plaintiff, however, seeks to hold an individual
defendant personally liable for damages, the causation inquiry
between the deliberate indifference and the alleged Eighth
Amendment deprivation is more refined:

> [The court] must focus on whether the
> individual defendant was in a position to
> take steps to avert the [harm], but failed to
> do so intentionally or with deliberate
> indifference. In order to resolve this
> causation issue, [the court] must take a very
> individualized approach which accounts for
> the duties, discretion, and means of each
> defendant. . . . Sweeping conclusory
> allegations will not suffice to prevent
> summary judgment. . . . The prisoner must set
> forth specific facts as to each individual
> defendant's deliberate indifference.

Id. at 633-34 (citations omitted).

15

The only admissible evidence the court has indicates that Aholelei never alerted anyone at the prison of his fears for his safety during the year and a half before the assault. During that year and a half, Aholelei existed without incident with gang members. Nor does the court have admissible evidence that Aholelei communicated his fears on the day of the assault, when he says he unwittingly insulted a gang member and then sought a private meeting with the gang to apologize and avoid an attack.

Aholelei did file grievances while he was housed with the gang members who later assaulted him. But his grievances, which sought a transfer to a minimum security facility, were based on his belief that his classification status justified a minimum custody placement. (See Op. Exhs. B-A, B-B, Grievance Nos. 86833 and 92759.) The grievances did not claim or even suggest that Aholelei was concerned for his safety because he was housed with gang members. In fact, Aholelei admits that "[a]s long as [he] went along with their rules, [he] was safe[,]" suggesting that he was not afraid for his safety until the day of the attack. (Compl. Stmt. of Facts ¶ 6.)

If Aholelei had notified prison officials of his alleged fears, either in the first year and a half that he was at HCF before the attack, or on the day of the attack, when he was concerned enough about his safety to seek help from an inmate intermediary to apologize to the gang member, officials might

have been able to prevent the assault.  But Aholelei did not
notify officials.  They had no notice that he had a well-grounded
and specific fear of an impending assault.  Without this notice,
Aholelei cannot show that Defendants were deliberately
indifferent to his fear or that they are liable for failing to
protect him.

          Aholelei seems to be suggesting that the danger to him
was obvious.  But just saying so does not make that so, and the
evidence is to the contrary.  Kaplan says that prisoner housing
assignments are determined according to the inmates initial
processing and classification status.  (See Kaplan Dec. ¶ 5.)
Then, acting from experience, the prison separates similarly
classified rival gangs from each other.  (Id. ¶ 9.)  Once rival
gangs are separated, similarly classified inmates are housed with
the like-classified gang members.  The prison's experience was
that gang members were then "no more violent than the prison
population in general."  (Id. ¶ 10.)  As harsh as it may seem,
when Aholelei inadvertently violated an unwritten gang rule on
October 3, 2003, it was incumbent on him to notify prison
officials of his well-founded fear so that they could protect him
from the assault that occurred.  Absent such notice, the
individual Defendants cannot be said to have intentionally placed
Aholelei in harm's way or to have acted with deliberate
indifference to his safety.  Aholelei has failed to state a claim

17

for a violation under the Eighth Amendment, and Defendants'
Motion for Summary Judgment is GRANTED.

IV.  Defendants Are Entitled to Qualified Immunity.

       The individual Defendants also assert, in the
alternative, that they are entitled to qualified immunity.  this
court agrees.

       Saucier v. Katz, 533 U.S. 194 (2001), sets forth a
two-step inquiry for determining whether qualified immunity
applies.  First, "[t]aken in the light most favorable to the
party asserting the injury, . . . the facts alleged [must] show
[that] the officer's conduct violated a constitutional right."
Id. at 201.  This prong of the Saucier inquiry "mirrors the
substantive summary judgment decision on the merits."  Sorrels v.
McKee, 290 F.3d 965, 969 (9th Cir. 2002).  "If no constitutional
right would have been violated were the allegations established,"
the inquiry ends.  Saucier, 533 U.S. at 201.  If there appears to
have been a constitutional violation, however, the second step is
to determine whether the right in question was "clearly
established . . . in light of the specific context of the case,
not as a broad general proposition."  Id.; Walker v. Gomez,  370
F.3d 969, 974 (9th Cir. 2004).

       As detailed above, the facts alleged do not show that
the individual Defendants violated Aholelei's constitutional
right to be free from cruel and unusual punishment by their

                              18

failure to protect him from the assault at issue here.  See
Saucier, 533 U.S. at 201.  Aholelei does not escape these facts
by alleging that the housing policy he lived with at HCF is
unconstitutional, and that he has a right to be housed only with
non-gang members.

      "Prisons are inherently dangerous institutions, and
decisions concerning safety, order, and discipline must be, and
always have been, left to the sound discretion of prison
administrators."  Lewis v. Casey, 518 U.S. 343, 391 (1996);
Johnson v. California, --- U.S. ---, 125 S. Ct. 1141, 1152
(2005).  "[M]aintaining institutional security and preserving
internal order and discipline" are the central goals of prison
administration.  Bell v. Wolfish, 441 U.S. 520, 546 (1979).
Inmate housing assignments are basic security decisions best left
to the sound discretion of prison authorities.

      Aholelei does not have a constitutional right to be
housed only with non-gang members, in the prison of his choice,
or in a specific area of the prison.  See Meachum v. Fano, 427
U.S. 215, 224 (1976) (no right to a particular institution); Olim
v. Wakinekona, 461 U.S. 238, 244-45 (1983) (no right to a
particular state); Grayson v. Rison, 945 F.2d 1064, 1067 (9th
Cir. 1991) (no right to less restrictive facility).  There is
simply no constitutional principle forbidding prisons from
housing gang members with non-gang members.  Thus, Aholelei's

allegations do not make out a constitutional violation, and the individual Defendants have qualified immunity.

**CONCLUSION**

Defendants are entitled to Eleventh Amendment immunity from suit in their official capacities. Because Aholelei has been transferred, the court lacks jurisdiction over his claims seeking injunctive relief with respect to what is occurring at HCF, and those claims are dismissed. Aholelei has failed to show that the individual Defendants acted with deliberate indifference with respect to his safety, and there is no genuine issue of material fact relating to any alleged Eighth Amendment violation. Moreover, the individual Defendants are also entitled to qualified immunity, given Aholelei's failure to make out a constitutional violation, even assuming his factual allegations are true. Defendants' Motion for Summary Judgment is GRANTED.

Defendants have stated that they will withdraw their Third-Party Complaint if they are granted summary judgment against Aholelei. The Third-Party Complaint is therefore deemed withdrawn, and Third-Party Defendant Stanley Canosa's pending motion for summary judgment is rendered moot.

The Clerk is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

Dated:  Honolulu, Hawaii, December 6, 2005.

_____
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

AHOLELEI v. Dep't of Public Safety, et al., CIV. NO. 04-00414 SOM-KSC; ORDER GRANTING
DEFENDANTS' AND THIRD-PARTY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; dmp\orders
'05\AHOLELEI 04-414 MSJ

21

William S. Aholelei                                          CV 04-00414 SOM-KSC
A0146949
OCCC
2199 Kamehameha Hwy
Honolulu, HI 96819

Stanley L. Canosa
Halawa Correctional Facility
99-902 Moanalua Rd.
Aiea, HI 96701

John Cregor, Jr
Office of the Attorney General-Hawaii
425 Queen St
Honolulu, HI 96813

Cindy S. Inouye
Office of the Attorney General-Hawaii
425 Queen St
Honolulu, HI 96813