IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KRISTOPHER KEALOHA, | ) Civ. No. 05-00009 ACK-KSC |
| Plaintiff, | ) |
| v. | ) |
| DEPARTMENT OF PUBLIC SAFETY OF THE STATE OF HAWAII and LEE FIELDS, | ) |
| Defendants. | ) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION

Kristopher Kealoha brought this action against the Department of Public Safety of the State of Hawaii and Lee Fields. In light of the Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (Jul. 20, 2006), the claims remaining for trial are: (1) Section 1983 claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment, against Fields in his individual capacity; (2) violation of Hawaii Constitution Article I, Section 12, against the Department of Public Safety and Fields in his individual capacity; and (3) negligence, against the Department of Public Safety and Fields in his individual capacity. Fields asserts qualified immunity from all claims.

The Court held a nonjury trial on April 17-18, 2007. The Court enters the following findings of fact, conclusions of

EXHIBIT "B"

management, medical, mental health, and social work, check the inmate's record, and look at adjustment hearing results.

6.  Kealoha was previously housed in a prison facility in Florence, Arizona, where he joined the USO Family gang. He obtained a gang identifying tattoo on his right upper arm while in the Florence facility in 2000, consisting of the letters U-S-O.

7.  In approximately December 2001, while housed at Halawa, Kealoha withdrew from the USO Family gang.

8.  When a gang member leaves a gang, if that former member has a gang identifying tattoo, he is asked to cover the tattoo. The gang tattoo is usually covered by a new tattoo. If the former member does not cover the gang tattoo, he is subject to being disciplined by gang members. Sgt. Fields was aware of these facts. Sgt. Fields has never heard of an inmate at Halawa being killed for leaving a gang, nor (Plaintiff's allegations aside) of a gang tattoo being forcefully removed or burned off.

9.  In early November 2002, Kealoha was housed in Module A of the high security special needs facility (the "High") at Halawa.[1] Kealoha was aware of no USO Family gang members in his module (High Module A).

10. On approximately November 13, 2002, Kealoha was

---

[1]Kealoha was placed into High Module A shortly after he escaped from the minimum security Waiawa Correctional Facility and was recaptured.

3

fact, even though it is not reflected in his report dated January 29, 2003; Kealoha's testimony does not dispute this fact.

16. Medium Module 1 (which includes Medium Module 1A) generally had little drug activity, assaults, or incident reports - unlike Medium Module 2, which was a more rough module. Deputy Warden Tanaka and Sgt. Fields both testified credibly to these facts; Kealoha did not dispute these facts or offer any evidence that Medium Module 1A was a rough module, other than Kealoha's testimony about the alleged assault that he suffered in Module 1A. In viewing the demeanor of the witnesses, their testimony and responses to questions, the Court finds overall that Sgt. Fields and Deputy Warden Tanaka were credible witnesses and that Kealoha's testimony generally lacked credibility.

17. In early November 2002, there were two USO Family gang members housed in Medium Module 1A, Quad 4: Gilbert Rivera and Eddie Leiato. See Exhibit 114. Sgt. Fields was aware that these two USO Family gang members were housed in Medium Module 1A, as well as members of other gangs, including LaFamilia and Mafia USO. See infra Finding of Fact ¶ 27.

18. During the meetings between Kealoha and Sgt. Fields between approximately November 15, 2002 and November 22, 2002, Sgt. Fields informed Kealoha that Medium Module 1 had little drug activity, assaults, or incident reports and was less rough than Medium Module 2.

5

144 at HCF1003, HCF1005.

34. Upon discharge from the Infirmary, Kealoha was assigned to High Module A.

35. Sometime between his discharge from the Infirmary on December 2, 2002 and December 5, 2002 at 1pm, Kealoha suffered a burn on his right upper arm. Kealoha did not have the burn at the time of his discharge from the Infirmary.

36. On December 5, 2002 at 1pm, Kealoha submitted an Inmate Injury Report, complaining that on November 25, 2002, he was assaulted by another inmate with a lit toilet paper roll and his right upper arm was burned. <u>See</u> Exhibit 7. At trial, Kealoha testified that the November 25 date was inaccurate, and that the assault actually took place on November 24, 2002; Kealoha testified that it was two USO Family gang members housed in Medium Module 1A that assaulted him.[10/] For the reasons described <u>supra</u> and <u>infra</u> with respect to the medical records from November 25 to December 2, 2002, the Court finds Kealoha's testimony regarding the date of and events surrounding his burn to be incredible. No physical evidence of a burn injury, or an

---

[10/]According to Kealoha, the two inmates who assaulted him were Gilbert Rivera and Eddie Leiato - the two members of the USO Family gang that were housed in Medium Module 1A, Quad 4 on November 24, 2002. In early December 2002, shortly after Kealoha was reassigned to High Module A, Rivera was also reassigned to High Module A. It is unclear why Rivera was transferred to High Module A, but it could have been for any number of reasons unrelated to Kealoha.

13

assault, prior to December 5, 2002 was introduced at trial.

37. In addition to being contradicted by the medical records and testimony of Dr. Bauman, the Court finds Kealoha's testimony regarding the alleged assault to be incredible because, as described in Finding of Fact ¶ 32, Kealoha has changed his story since reporting the alleged assault. Moreover, on the day of the alleged assault, Kealoha denied that he was assaulted. Over a week later when he reported the alleged assault, Kealoha asked the nurse how much money he could get for the injury. Additionally, Kealoha's story is at least slightly undermined by his repeated requests after the alleged assault to be transferred to a prison facility in Diamondback, Oklahoma, which (as testified to by Sgt. Fields and Deputy Warden Tanaka) has a heavy population of USO Family gang members. See Exhibits 22-23, 25-27, 29-30.

38. P. Smith was the examining nurse who filled out the Inmate Injury Report for Kealoha on December 5, 2002. See Exhibit 7. As indicated in the report, on December 5, 2002, the burn was clean, with serous drainage, mild swelling, and pain, but was not infected. The drainage and swelling are consistent with a new injury occurring between December 2 and 5, since by the time of his discharge from the Infirmary on December 2, Kealoha's infected tattoo was healing well, so that it was no longer draining or inflamed. See Exhibit 144 at HCF1003,

risk to Kealoha's safety. While Sgt. Fields knew that some USO Family gang members were housed in Module 1A, Sgt. Fields also knew that Medium Module 1 had few assaults and was a less rough module than Medium Module 2. Sgt. Fields thought that Kealoha would be safe in Module 1A. Even Kealoha thought that he would be safe in Module 1A, despite Kealoha's knowledge that it housed a small number of USO Family gang members. Indeed, the Court has found no evidence (other than Kealoha's own incredible testimony) that Kealoha was assaulted in Medium Module 1A. Moreover, Sgt. Fields asked Kealoha if Kealoha wanted to go into protective custody; Kealoha declined. In short, Sgt. Fields did not act with deliberate indifference to Kealoha's safety when he recommended that Kealoha be housed in Medium Module 1A.[12]

8.  With respect to prison officials' alleged failure to provide Kealoha with adequate medical treatment, the evidence has demonstrated that Kealoha did in fact receive adequate medical care: first, for his infected tattoo beginning November 25th, and then for his burn beginning December 5th.[13] Kealoha has not

---

[12] Nor can Deputy Warden Tanaka be said to have acted with deliberate indifference in transferring Kealoha to Medium Module 1A. Tanaka knew that Medium Module 1A had little assault-type activity and thought that Kealoha would be safe there.

[13] Kealoha apparently refused medical treatment on November 24th because he did not want to make a statement. However, there is no evidence that he actually needed medical treatment at that time. The Court has found that he did not have a burn on November 24th; there has been absolutely no evidence (other than
(continued...)

interest of protecting Kealoha from harm.  Accordingly, the Court concludes that Sgt. Fields is entitled to qualified immunity from the state negligence claim.

### III. Decision

Plaintiff has failed to prove his claims by a preponderance of the evidence.  Defendants are entitled to judgment on all counts.

The Court declines to grant Plaintiff's counsel's request to transfer Plaintiff to the Honolulu Federal Detention Center, in view of this Court's findings and conclusions, its decision that Plaintiff failed to prove his claims, Plaintiff's failure to plead for such relief, and in any event, questions raised as to this Court's jurisdiction for such relief.  Should Plaintiff wish to pursue such relief, he should file a separate action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 2, 2007.



_____
Alan C. Kay
Sr. United States District Judge

Kealoha v. Dept. of Public Safety, et al., Civ. No. 05-00009 ACK-KSC, Findings of Fact, Conclusions of Law, and Decision.